UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


LISA M. DENEWETH,

          Plaintiff,                   CIVIL ACTION NO.10-11657

     v.

MICHAEL J. ASTRUE,               MAGISTRATE JUDGE VIRGINIA M. MORGAN
COMMISSIONER
OF SOCIAL SECURITY,

          Defendant.

_____/

**OPINION AND ORDER**
**GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (D/E #13), AND**
**DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (D/E #9)**

**I.  Introduction**

      This is an action for judicial review of defendant's decision denying plaintiff's

application for social security disability benefits.  Plaintiff alleged that she became disabled as of

March 15, 2002 due to osteoarthritis of the bilateral knees and resulting pain.  She had stopped

working voluntarily in April 2000 (unrelated to her medical issues) and was insured for benefits

through June 30, 2003.  The Commissioner determined that plaintiff did not meet the Listings for

impairments, and that through June, 2003, the date her insured status expired, she was not able to

perform her past relevant work but retained the ability to perform the full range of sedentary

work.  Accordingly, the Commissioner found her not disabled and denied benefits.  After the

agency issued a final decision, plaintiff filed the instant action.  On September 16, 2010, the

- 1 -

parties consented to the jurisdiction of the magistrate judge pursuant to 28 U.S.C. §636(c) and Judge Roberts referred the case to this court. (D/E #10)

The matter comes before the court now on cross motions for summary judgment (D/E #9, 13). For the reasons set forth in this opinion, the court grants defendant's motion for summary judgment and denies plaintiff's motion for summary judgment, and affirms the Commissioner's decision.

## II. Background

At the time of the decision, plaintiff was 53 years old (DOB 1956). She has a high school education and some courses at community college. Plaintiff has past relevant work as an office manager for a condominium. She stopped working in April, 2000 because her husband was retired and she wished to retire and relocate. (Tr. 37, 40) The ALJ found that plaintiff acquired skills transferable to sedentary work such as public contact, office administration, date entry, phone answering, general clerical, and record keeping. (Tr. 22) The vocational expert testified in response to a hypothetical question, that if she could perform sedentary work, there would be 30,000 office-type jobs existing regionally. If she were limited to sedentary work requiring a sit/stand option, there would be such jobs as assembler, packer, and sorter of which 5000 exist regionally and 8000 exist state-wide. (Tr. 23) After considering the testimony of plaintiff, the vocational expert, and the medical evidence, the ALJ opined that plaintiff could perform the full range of sedentary work and was not disabled.

Plaintiff contends that this finding is not supported by substantial evidence because the Commissioner ignored evidence that showed plaintiff required a sit/stand at-will option and

lacked the ability to perform sedentary work on a sustained basis and could not work in a competitive setting.

### III. Standard of Review

A person is "disabled" within the meaning of the Social Security Act "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Further,

> an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A). The claimant bears the burden of proving that he is disabled. *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001).

A five-step process is used to evaluate DIB claims. 20 C.F.R. § 404.1520. In *Foster*, 279 F.3d at 354 (citations omitted), the Sixth Circuit discussed the process:

> The claimant must first show that she is not engaged in substantial gainful activity. Next the claimant must demonstrate that she has a "severe impairment." A finding of "disabled" will be made at the third step if the claimant can then demonstrate that her impairment meets the durational requirement and "meets or equals a listed impairment." If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that she

is incapable of performing work that she has done in the past. Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work.

On judicial review, a court must determine whether the agency's decision is supported by substantial evidence. *Gillespie v. Commissioner*, 2010 WL 4063713, *3 (ED MI) (Lawson, J.)(collecting cases). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, *Richardson v. Perales*, 402 U.S. 389, 401 (1971), see also *Lashley v. Sec'y of HHS*, 708 F.2d 1048, 1053 (6th Cir. 1983). If so, the agency's decision is to be affirmed.

If the decision is not supported by substantial evidence, then Sentence Four of 42 U.S.C. § 405(g) provides that a district court has the power "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary [now Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). A sentence four remand provides the required relief in cases where there is insufficient evidence on the record to support the Commissioner's conclusions and further fact-finding is necessary. *See, Faucher v. Secretary of Health and Human Servs.,* 17 F.3d 171, 174 (6th Cir. 1994) (citation omitted). In a sentence four remand, the court makes a final judgment on the Commissioner's decision and "may order the Secretary to consider evidence on remand to remedy a defect in the original proceedings, a defect which caused the Secretary's misapplication of the regulations in the first place." *Faucher*, 17 F.3d at 175. Also under Sentence Four, an agency's decision may

be reversed and benefits immediately awarded if the record adequately establishes a plaintiff's entitlement to benefits. *Newkirk v. Shalala*, 25 F.3d 316, 317 (6th Cir. 1994). Where an adequate record exists, the decision denying benefits can be reversed and benefits immediately awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking. *See Faucher*, 17 F.3d at 176. Where remand would be an idle and useless exercise, courts are not required to convert judicial review of agency action into a ping-pong game. *Wilson v. Commissioner*, 378 F3d 541, 547 (6th Cir 2004) (citing *NLRB v. Wyman-Gordon*, 394 U.S. 759, 766 n.6(1969)(plurality opinion)).

## IV. Discussion

In this case, plaintiff alleges that she could not perform a full range of sedentary work through June, 2003 due to pain and limitation, and that the ALJ's finding to the contrary is not supported by substantial evidence.

At the hearing, plaintiff testified that she stayed home to raise her daughter from 1983 to 1988 or 1989. She cleaned houses for a little bit and subsequently obtained the job at the condominium. Her knee began to bother her in 2000 or 2001. (Tr. 40-41) She was unable to walk the condominium to deliver the newsletters and then began having problems driving because of her right knee. (Tr. 42-43) Plaintiff first sought orthopedic treatment for her knee problems in January, 2003, with Dr. C. Roodbeen, M.D., an orthopedic specialist who prescribed her Celebrex in April and June, 2003. Plaintiff had arthroscopic surgery on her knees and in 2003 or 2004. It appears that the knee replacement was done until September, 2005. (Tr. 49-50) Plaintiff also testified that he had two hip replacements in 2006 and 2007 and in 2004 or 2005,

she had her right ear replaced. (Tr. 46-47)  In January 2006, her femur broke above the prosthetic knee and a seven inch plate and nine screws were put in. (Tr. 47-48)

Plaintiff testified that she still is never comfortable.  She needs a lot of assistance; she can't really go to the mall as she needs to take a wheelchair when she is there. She hardly ever goes there. (Tr. 50-51)   She uses a cane and has a handicapped parking permit. (Tr. 51-52) Plaintiff also testified to arthritis in her low back, neck, and thumbs.  Id.  However, she can shower, dress, groom herself, prepare breakfast, write bills, crochet, clean up after meals and perform home exercises. (Tr. 115) She socializes daily in her home–in person, on the phone, and on the computer. (Tr. 119)

The vocational expert noted that plaintiff had worked as the office manager for the condominium complex and it has been her only job for the past 15 years. The job was light, semi-skilled to skilled work.  (Tr. 58-59)  If she could do sedentary work, there would be over 30,000 jobs that she could perform in the general categories of clerk, customer service representative, and similar jobs.  The jobs would be limited to those with only occasional use of the lower extremities with respect to foot pedals, stairs, stooping or bending and walking no more than four of eight hours. (Tr. 59) If she required sedentary work with a sit/stand option, there are unskilled entry level jobs such as packaging, sorting, and simple assembly. (Tr. 60) There are approximately 6000 such jobs.

Medical records show that in April, 2003, plaintiff was seen by Dr. Surender Kurapati, M.D. for an MRI scan of her right knee.  The impression was mild or minimal effusion in the right knee joint, possible bone contusion in the medial femoral condyle, and slight irregularity in

the surface of the lateral meniscus. No definite chondromalacia changes were seen. (Tr. 151) In May, 2003, plaintiff said that she had pain in her right knee when getting out of the car. She was unable to weight bear on right knee intially unpon standing or walking. (Tr. 213) She could sit for one to two hours. After she "gets started" her gait is within normal limits. (Tr. 213)   In June 2003, plaintiff was continuing to take Celebrex. (Tr. 258)  Plaintiff underwent physical therapy and she reported an overall decrease in her pain level and decreased knee locking. (Tr. 215)   An MRI showed that her cartilege was frayed in her right knee and she was discharged in July, 2003 for surgery.  (Tr. 219)  In August, 2003, plaintiff had an arthroscopy.

In September, 2003, about three months after her insured status expired, progress notes show that she was doing well with no significant problems. (Tr. 257) She returned to all daily activities with minimal difficulty. (Tr. 237)  Not until December, 2004, did she have a second arthroscopic surgery on her right knee and it is noted that the "previous arthroscopy [8/27/2003, Tr. 154] did help for a period of time and pain gradually returned. . . " (Tr. 152)   In November, 2005, she had further orthopedic problems with both hips, that is advanced arthritis in the hips and in the right knee.  (Tr. 157)

The ALJ found that plaintiff could perform sedentary work and that she did not need a sit/stand option.  Plaintiff contends that this finding is not supported by substantial evidence and that she was not able to perform sedentary work on a sustained basis.

*A. Plaintiff's Ability to Perform Sedentary Work on a Sustained Basis*

Sedentary work is defined as follows:

> Sedentary work involves lifting no more than 10 pounds at a time
> and occasionally lifting or carrying articles like docket files,
> ledgers, and small tools. Although a sedentary job is defined as
> one which involves sitting, a certain amount of walking and
> standing is often necessary in carrying out job duties. Jobs are
> sedentary if walking and standing are required occasionally and
> other sedentary criteria are met.

20 C.F.R. §404.1567(A).

In May, 2007, plaintiff's records were reviewed by Cheryl Newby, a physician, who

opined that plaintiff could perform light work–lifting up to 20 pounds occasionally, ten pounds

frequently, stand/walk for 2 of 8 hours, sit up to 6 hours in 8 hours with sit/stand option and

push/pull limitations in the lower extremities. (Tr. 205-6)

The ALJ considered the evidence and concluded that plaintiff's treatment hisroy from the

alleged onset date to the date last insured was "scant." Further, that her major surgeries took

place after her insured status had expired. (Tr. 20) This conclusion is supported by substantial

evidence. In January 2003, there was no effusion and good stability in the knee and in April,

2003, the MRI showed mild effusion. (Tr. 19, 151, 260) Plaintiff had some good results with

physical therapy and surgery and by September, 2003, her condition had significantly improved.

She resumed all daily activities with minimal difficulty. (Tr. 237)  This improvement lasted for

quite some time and it was not until late 2004 that her hips began to worsen to the point where

they required surgery.  No treating or examining physician opined that she needed a sit/stand

option and therefore, it was not error for the ALJ to decline to impose this limitation.  Even so, there were still jobs that she could do with such a limitation.

     *B.  Plaintiff's Credibility*

     Plaitniff alleges that the ALJ failed to properly evaluate her complaints of pain.  In Duncan v. Secretary of HHS, 801 F.2d 847 (6th Cir. 1986), this circuit held that subjective complaints of pain alone cannot support a finding of disability.  *See also*, 20 C.F.R. § 404.1529 (1995).  To support a finding of disability, there must be evidence of an underlying medical condition and (1) there must be objective  medical evidence to confirm the severity of the alleged pain arising from that condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.  Jones v. Secretary of HHS, 945 F.2d 1365, 1369 (6th Cir. 1991).  In this case, it is clear that plaintiff had severe arthritis in her right knee prior to the expiration of her insured status.  However, her course of physical therapy and Celebrex significantly improved her pain prior to June, 2003 when she was no longer insured.  While she had surgery in late August, 2003, by early to mid-September, 2003 she reported improved function and less pain.  The later hip and second knee surgery came well after the expiration of her insured status and cannot be used to provide substantial evidence of disabling pain 18 months earlier.  The evidence that is well beyond the relevant period is outside of the scope of inquiry.  *See, Casey v. Secretary of HHS*, 987 F2d 1230, 1233 (6th Cir. 1993).

     There was no need to obtain additional testimony from a medical expert.  The evidence submitted was clear and there were few clinical findings in the relevant period bearing on the severity and pain of her medical condition.  There is nothing in the record to conclude that

plaintiff's choice to stop working at the condominium office was other than her desire to retire with her husband. While she may have had some problems walking around the development to deliver papers, there is nothing in the evidence that would show her inability to perform sedentary work as identified by the ALJ.

## IV.  Conclusion

The defendant's motion for summary judgment is granted, that of the plaintiff denied, and the decision denying benefits is affirmed.

**SO ORDERED**.


S/Virginia M. Morgan
Virginia M. Morgan
United States Magistrate Judge


Dated: December 21, 2010

---

## PROOF OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on December 21, 2010.

s/Jane Johnson
Case Manager to
Magistrate Judge Virginia M. Morgan